SMITH *v.* UNDERHILL.

(*Supreme Court, General Term, First Department.　June* 3, 1892.)

1. PARTNERSHIP—ACCOUNTING—LIABILITY OF PARTNER—TRUSTEE OF CORPORATION.
　In an action between copartners for an accounting, where plaintiff is also a trustee of a corporation, defendant must plead the statutory liability of a trustee for failure to file an annual report, to charge plaintiff, as trustee, with a debt due from the corporation to the partnership.

2. SAME—DISSOLUTION—DUTIES OF LIQUIDATING PARTNER.
　Where by the terms of the agreement of liquidation the firm was to be closed up "as speedily as possible," it was the duty of the liquidating partner to sell, within a reasonable time, Produce Exchange certificates which belonged to the firm, and were in his possession at and after the date of dissolution.

8. Costs—Additional Allowance—Appeal—Discretion of Court.
   In such case the allowance of additional costs to plaintiff was a matter in the dis-
   cretion of the lower court.

Appeal from judgment on report of referee.

Action by William E. Smith against Stephen Underhill for an accounting
of the partnership of Smith & Underhill. From a judgment for plaintiff, en-
tered on the report of a referee, defendant appeals. Affirmed.

Argued before Van Brunt, P. J., and O'Brien and Barrett, JJ.

H. D. Van Orden, (Robert B. Alling, of counsel,) for appellant. Olin,
Rives & Montgomery, (George L. Rives, of counsel,) for respondent.

O'Brien, J. This is an action for an accounting of the partnership estate
of Smith & Underhill. The partnership had existed for many years, and was
dissolved by mutual consent April 30, 1886, on which day the partners en-
tered into an agreement by which defendant was made the liquidating part-
ner, since which time he has remained in possession of all the assets. But
two matters are now in dispute between the parties, which may be classified
as the Kings County Manufacturing Company account and the Produce Ex-
change certificates. In respect to the former, it appears that plaintiff in No-
vember, 1880, organized the Kings County Manufacturing Company, becom-
ing a trustee therein and president thereof, and continued such until the com-
pany ceased to do business. Plaintiff was also the principal stockholder in
such company, owning three sevenths of its stock, which stock represented a
capital fully paid in, in cash, of $7,000. Upon its formation some shares
were transferred by plaintiff to the defendant, who for a few months re-
mained as trustee, but resigned, transferring the stock back again to plaintiff.
The testimony shows that between November, 1880, and June, 1882, this
company had numerous dealings with the firm of Smith & Underhill. The
latter sold goods to the company, made it loans in money, and paid money to
third persons for its use. The business of the partnership was a general
produce commission business, and some evidence was introduced showing
that these dealings between the copartnership and the company were similar
in their nature to dealings carried on by the copartnership with other persons.
All these copartnership transactions were entered in the copartnership books
in two separate accounts, one of which, called the "Loan Account," con-
sisted simply of moneys of the copartnership, loaned by the plaintiff, Smith,
to the company, the full amount of which was paid by plaintiff, and the ac-
count closed, in June, 1882. In addition to this loan account was another,
showing items of merchandise and cash payments to take up drafts and notes
connected with the consignment to foreign countries of merchandise manu-
factured by the company, and which would appear to have been handled by
the copartnership. In this latter account we find the item of loans of $19,-
761.97, but it is conceded that this is the same item that appears as credited
to the firm, and which was transferred to this account from the loan account,
and, as stated, paid by the plaintiff. This need not, therefore, be referred
to again, because not in issue between the parties. In this general account
appears a balance due from the Kings County Manufacturing Company to
the firm of $9,180.74, and such was the account at the date of dissolution;
and, with the exception of two items, one in 1885 and one in 1886, it so ap-
peared in the books from February, 1883. After the dissolution, however,
without the knowledge or consent of the plaintiff, the defendant, assuming
that such amount was not chargeable against the firm, but against the plain-
tiff personally, balanced the same by debiting the plaintiff's account there-
with. The question, therefore, presented, is whether this amount of $9,180.74
was due the copartnership from the Kings County Manufacturing Company,
or from the plaintiff personally. Several grounds are urged by appellant for
holding that this was an indebtedness due by the plaintiff, all of which will

be briefly considered: *First,* that the use of the funds of Smith & Underhill by plaintiff to carry on the business of the Kings County Manufacturing Company rendered him personally liable for the loss occasioned thereby; *second,* that plaintiff was liable personally for all the debts of that company, including the amount due the firm, by the failure to file annual reports in 1882 and 1884; *third,* by taking and subsequently surrendering securities received from his cotrustees to secure him from any liability being placed upon him alone for indebtedness of the company, plaintiff became personally liable for the indebtedness due from the company to the firm.

In respect to the first, had the defendant sustained the claim in his answer to the effect "that, though such account is entered on said books in said company's name, yet the plaintiff herein was the principal stockholder and member of said company, and the advances made by said firm to said company were so made by the direction of said plaintiff, and for his benefit;" "that said company was insolvent, and said plaintiff, though he knew the same, notwithstanding, directed and made advances of the firm's money to said company,"—then his conclusion would have been right, that the plaintiff should be charged with the whole of said account of the company. This was the theory assumed by defendant in charging plaintiff, without his knowledge or consent, with this account, subsequent to the dissolution. This entry made after dissolution in the books was entirely unwarranted and unauthorized, and in no respect changed the position or rights of the parties. As respects partnership books between the partners, until the contrary appears it must be assumed that the entries therein are correct; and, while they are not conclusive, the burden is upon the one charging their incorrectness to show the same. This burden the defendant assumed. It was then made to appear, and is now conceded by counsel for defendant, that in respect to so much of the debt as arose from purchases of merchandise the plaintiff was not liable therefor. It is likewise conceded that this amount included certain items of merchandise, amounting to several hundreds of dollars. Exclusive, however, of such items of merchandise, the appellant claims that the balance is made up of moneys loaned by the plaintiff out of the copartnership funds. It is unquestionably the law that one partner has no right, without the knowledge and consent of his copartner, to loan the partnership money or assets. The question presented, however, is, were these loans pure and simple of partnership moneys? The burden was upon defendant to sustain this claim; and upon testimony tending to show that these cash items were connected with the consignment of merchandise to foreign countries, in the consignment of which the firm assumed to act as principals, and with respect to some, if not all, of which the defendant co-operated and consented, the referee concluded that the burden placed upon the defendant had not been sustained, but, on the contrary, that the plaintiff's view was correct; that these transactions were similar in their nature to dealings carried on by the firm with other persons, and out of which the firm expected remuneration; and that any loss resulting therefrom, and properly chargeable against the Kings County Manufacturing Company account, was the firm's, and not one for which the plaintiff was alone responsible. There being evidence to sustain the view taken by the referee, and such as was given to the contrary not being so preponderating as to warrant us in reaching a different view upon the questions of fact, we would not be justified in disturbing his findings.

With reference to the second ground, as to the statutory liability imposed upon trustees for failure to file annual reports, two answers are conclusive against appellant's contention: *One,* that it was not pleaded; and, *second,* that it is barred by the statute of limitations. In respect to the claim that the taking from and giving up of security to his cotrustees made the plaintiff personally liable for the indebtedness of the company due to the firm, it is sufficient to say that it has not been established that the plaintiff took any secu-

rity to cover this indebtedness of $9,180.74; but the contrary does appear, that such was taken to secure a different claim, which, when paid, resulted in a surrender of such securities. For these, in addition to the reasons assigned for his conclusion by the referee, we think that the position of appellant in respect to the Kings County Manufacturing Company account should not be sustained.

The second question presented on this appeal relates to the Produce Exchange certificates. These were in the possession of the defendant as liquidating partner at and after the date of dissolution, and under the very terms of the agreement of liquidation the firm was to be closed up "as speedily as possible." These certificates the defendant retained up to the commencement of this action, and, so far as appeared, has never sold them, even up to the present time. Under no view of the duty devolving upon him can it be held that he was entitled to retain such certificates, when at any time during this long period the same could have been sold, and should have been, with a view of closing up the affairs of the partnership. We think that the rule applied by the referee was the correct one,—that it was the duty of the defendant, as liquidating partner, to have sold the same within a reasonable time after dissolution; and, having in view all the facts in this case with respect to what was a reasonable time, we find no ground for criticising the view taken by the referee that six months after the date of dissolution was a reasonable time within which these certificates should have been sold.

In regard to the allowance granted to plaintiff, this was a matter within the discretion of the learned justice at special term; and in view of the character of the litigation, and its outcome, we do not think that such discretion was improperly exercised in the granting of the allowance. We have examined, in addition to these claims urged by appellant, the various exceptions to findings and to rulings upon questions or evidence, and have discovered no errors that would justify us in interfering with the judgment. We are of opinion, therefore, that it should be affirmed, with costs.

VAN BRUNT, P. J., and BARRETT, J., concur in result.